UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JEFFREY K.,

                           Plaintiff,

v.                                                                            5:18-CV-0688
                                                                             (TWD)

COMM'R OF SOC. SEC.,

                           Defendant.
_____

APPEARANCES:                                              OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON         STEVEN R. DOLSON, ESQ.
 Counsel for Plaintiff
126 North Salina Street, Suite 3B
Syracuse, New York 13202

U.S. SOCIAL SECURITY ADMIN.                GRAHAM MORRISON, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza - Room 3904
New York, NY 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## **DECISION and ORDER**

      Currently before the Court, in this Social Security action filed by Jeffrey K. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 7 and 9.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is granted and Defendant's motion for judgment on the pleadings is denied.

I.      **RELEVANT BACKGROUND**

   A.      **Factual Background**

Plaintiff was born in 1963, making him 51 years old at the alleged onset date and 53 years old at the date of the ALJ's decision. Plaintiff reported completing the twelfth grade and he had training in computer-aided design ("CAD"). He has previous work as a forklift driver, warehouse checker, and computer-assisted drafter or CAD operator as identified by the vocational expert at the administrative hearing. Plaintiff initially alleged disability due to Crohn's disease and brain issues.

   B.      **Procedural History**

Plaintiff applied for a period of disability and disability insurance benefits on May 21, 2015, alleging disability beginning December 15, 2014. Plaintiff's application was initially denied on June 25, 2015, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at an administrative hearing before ALJ Julia D. Gibbs on February 28, 2017. (T. 33-92.)[1] On May 23, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act. (T. 8-30.) On May 1, 2018, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (T. 1-4.)

   C.      **The ALJ's Decision**

The ALJ found Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and he has not engaged in substantial gainful activity since

---

[1]     The Administrative Transcript is found at Dkt. No. 6. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system. All other page references identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

December 15, 2014, the alleged onset date. (T. 13.) Plaintiff's Crohn's disease, degenerative disc disease of the cervical spine status-post surgery, and chronic lumbar and thoracic pain with radiculopathy are severe impairments, but he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 14-15.) Plaintiff has the residual functional capacity ("RFC") to perform light work except

> Such work may be performed either sitting or standing, and thus allows an individual to alternate between those positions without stopping work or leaving a work site. Such work does not require working in a small enclosed area, such as a booth. Such work provides for access to bathroom facilities and does not require rapid rotation of the neck.

(T. 16.) Plaintiff is unable to perform any past relevant work, but he can perform other jobs existing in significant numbers in the national economy. (T. 26-27.) The ALJ therefore concluded Plaintiff is not disabled.

### D. The Parties' Briefings on Their Cross-Motions

In support of his motion for judgment on the pleadings, Plaintiff argues the ALJ failed to fully develop the record and led Plaintiff "to believe the record was more complete than it was." (Dkt. No. 7 at 5-13.) Plaintiff also asserts the ALJ failed to fully develop the record by recontacting Plaintiff's treating physicians for a medical source statement or by ordering a consultative examination. (*Id*. at 8-13.)

In contrast, Defendant argues the ALJ properly developed the record. (Dkt. No. 9 at 6-10.) Defendant also contends Plaintiff's argument that the ALJ erred by not ordering another consultative examination is meritless because the ALJ "already obtained physical and psychiatric consultative examinations at the government's expense conducted in connection with Plaintiff's claim." (*Id*. at 9.) Defendant maintains the "ALJ was under no obligation to order an additional

consultative examination." (*Id.*)  Finally, Defendant argues the ALJ's physical RFC determination was supported by Dr. Ganesh's opinion finding no physical limitations. (*Id.* at 9-10.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as

5

> to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Plaintiff's Right to Representation

"A claim of entitlement to social security benefits triggers Due Process Clause protections." *Pokluda v. Colvin*, 13-CV-0335 (GLS/ESH), 2014 WL 1679801, at *3 (N.D.N.Y. Apr. 28, 2014) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976)). Generally, due process requires only that the proceedings in the context of an administrative social security hearing be "full and fair." *Id*. (citing *Richardson*, 402 U.S. at 401-02; *Echevarria v. Sec'y of HHS*, 685 F.2d 751, 755 (2d Cir. 1982)).

"Claimants have a statutory right to notification of their options for obtaining legal representation in [Social Security disability] claims." *Grant v. Astrue*, 05-CV-1138 (LEK/DRH), 2008 WL 2986393, at *4 (N.D.N.Y. July 31, 2008) (citing 42 U.S.C. §§ 406(c), 1383(d)(2)(B)). "At the hearing itself, 'the ALJ must ensure that the [plaintiff] is aware of [her] right [to counsel].'" *Sindoni v. Colvin*, 14-CV-0633 (GTS), 2015 WL 3901955, at *4 (N.D.N.Y. June 25, 2015) (quoting *Robinson v. Sec'y of HHS*, 733 F.2d 255, 257 (2d Cir. 1984)). Notably, "[t]he Second Circuit rejected the 'enhanced disclosure requirements' established in some circuits." *Sindoni*, 2015 WL 3901955, at *4 (citing *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508 (2d Cir. 2009)). "Even if an ALJ does not sufficiently inform a plaintiff of his/her rights, the lack of counsel, in and of itself, is not a sufficient ground upon which remand or reversal may be based." *Grant*, 2008 WL 2986393, at *5 (citing *Alvarez v. Bowen*, 704 F. Supp. 49, 53 (S.D.N.Y. 1989)).

Rather, "Plaintiff must show prejudice or unfairness in the proceeding." *Grant*, 2008 WL 2986393, at *5 (citing *Evangelista v. Sec'y of HHS*, 826 F.2d 136, 142 (1st Cir. 1987)). Additionally, "[t]he Commissioner of Social Security is not obligated to provide a claimant with counsel," though where a claimant proceeds *pro se*, "the ALJ has a duty 'to scrupulously and conscientiously probe into, inquire of, and explore all relevant facts.'" *Lamay*, 562 F.3d at 509 (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)).

Notwithstanding the arguments of counsel in their briefs, the Court finds remand is required here Plaintiff did not properly waived his right to representation after being made aware of that right at the administrative hearing. Plaintiff appeared unrepresented at the February 2017 administrative hearing after his previous representative withdrew in November 2016. (T. 35, 148-49.) When first asked by the ALJ if he wanted to go ahead without a representative, Plaintiff indicated he did not know and asked her if he needed one. (T. 36.) The ALJ explained she would conduct the hearing the same way without or without a hearing representative. (*Id*.) Plaintiff expressed confusion as to what evidence had been submitted, then he and the ALJ discussed the record and the evidence which had been submitted by his previous representative. (T. 37-39.) The ALJ stated she was not allowed to advise him one way or another and stated he had to make a decision. (T. 37.) Plaintiff again stated he did not know what evidence the ALJ had and asked her to explain what evidence she had. (*Id*.) The ALJ stated they would move ahead and she would give him another chance later to decide whether he wanted to "continue it to get a representative." (*Id*.) The transcript of the hearing indicates she began to ask Plaintiff "How's that –" to which he responded "All right. All right." (*Id*.)

The ALJ proceeded to take testimony from Plaintiff and discuss his alleged impairments as well as the evidence of record. (T. 37-53.) She subsequently asked Plaintiff again if he

wanted more time to get a representative or to get more evidence, to which he responded she did not have evidence including records related to his femur issue. (T. 53-54.) The ALJ indicated it was up to Plaintiff and stated she could go ahead that day and take his testimony and then give him time to get the additional medical evidence and bring it up to date. (T. 54.) She explained the last thing she had was possible Crohn's disease in May 2016 and Plaintiff stated he had an appointment with gastroenterologist Dr. Sun the next month. (*Id.*) They then engaged in a discussion of Plaintiff's treatment and the evidence of record. (T. 54-58.)

The ALJ again stated she would give Plaintiff another chance to decide about representation, indicating she could take his testimony and if she got more information, she would consider it. (T. 58.) She noted they would call this the hearing or they could continue the hearing to give him time to get another representative and to update his records. (*Id.*) Plaintiff appears to again start to say that the ALJ did not have all the evidence. (*Id.*) The ALJ interjected that she was "not as concerned as I was at the beginning" and indicated she had very little about Plaintiff's truck accident, but various test results were normal. (T. 58-59.) She noted they did not do a comprehensive neuropsychological test and Plaintiff indicated he could not afford it. (T. 59.) The ALJ reiterated the completed tests were normal and Plaintiff again told the ALJ she did not have all the tests. (*Id.*) He mentioned testing done because he had ringing in his ears and hearing loss in both ears. (*Id.*)

The ALJ asked Plaintiff the medical sources for this testing and again began discussing some of the medical exhibits. (T. 59-60.) The ALJ then stated again they could go ahead and she would take Plaintiff's testimony, but he had to make a decision of whether he wanted to go ahead without a representative. (T. 60.) Plaintiff then asked if she had any records from Psychiatric Wellness Care, and the ALJ responded that she did. (*Id.*) They then discussed

8

Plaintiff's mental health treatment. (T. 60-61.) Plaintiff asked the ALJ if she had anything from Dr. Damron and they then discussed Plaintiff's impairments, treatment, and the evidence of record. (T. 61-63.) The ALJ subsequently stated "we'll go ahead with the hearing now. Let's take each impairment one by one" and proceeded to take testimony from Plaintiff indicating they would "try to get updated records to fill in the blanks." (T. 64-77.) The ALJ then explained how Plaintiff could request updated medical reports from his physicians and took testimony from a vocational expert. (T. 77-91.)

The ALJ's efforts to investigate the record and Plaintiff's treatment history at the hearing are clear to the Court. The ALJ did acknowledge Plaintiff was not represented and asked him several times if he wanted to go ahead without representation or if he wanted more time to get a new representative, reiterating he had to make a decision about representation. (T. 35-37, 60.) The ALJ stated in her decision that "[a]lthough informed of the right to representation, the claimant chose to appear and testify without the assistance of and attorney or other representative." (T. 11.) However, Plaintiff never clearly made that decision, and continued to inquire whether the ALJ had all of his records and to answer her questions.

Rather, the ALJ eventually indicated they would go ahead with the hearing, taking each impairment one by one, and they would then try to get updated records to fill in the blanks. (T. 64.) However, it does not appear Plaintiff explicitly waived his right to representation or signed any form acknowledging that waiver. (*Id.*) While the ALJ notified Plaintiff of his right to representation, it does not appear that he understood nor does it appear he properly waived that right before continuing to give testimony regarding his impairments. *See Grant*, 2008 WL 2986393, at *4; *Sindoni*, 2015 WL 3901955, at *4 (quoting *Robinson*, 733 F.2d at 257). Given

9

Plaintiff's repeated questions about whether the ALJ had all of his medical records, the decision by the ALJ to continue the hearing without a definitive waiver of counsel was unfair to Plaintiff.

The Second Circuit discussed the statutory requirements regarding notification of the right to representation in *Lamay*, explaining that, at the hearing, the ALJ must ensure the claimant is aware of his right to counsel. *Lamay*, 562 F.3d at 507 (quoting *Robinson,* 733 F.2d at 257) (internal citations omitted). The Second Circuit declined to adopt additional mandatory disclosures as the Fifth, Seventh, and Eleventh Circuits had. *Id*. at 507-08. In *Lamay*, the Second Circuit noted the claimant "indicated twice she preferred to proceed, alone, immediately" and explained the Court could not say she was unaware of her right to counsel or that she waived that right involuntarily or without knowledge. *Id*. at 509. In contrast, here Plaintiff does not appear to ever indicate he preferred to proceed without representation. (T. 33-92.)

In *Sindoni*, this Court ultimately found the ALJ fulfilled her obligation to inform Plaintiff of her right to representation, noting

> At the hearing, the ALJ specifically asked Plaintiff if she was aware that she had the right to representation and Plaintiff answered, "[y]es. I did." (T. 35.) The ALJ proceeded to inform Plaintiff of her right to representation, informed her of organizations that provided services free of charge, and also of private attorneys whom Plaintiff wouldn't need to "pay upfront." (T. 35–36.) Plaintiff indicated that she understood and wished to proceed without representation. (T. 36.) Therefore, prior to the hearing the Commissioner fulfilled her statutory obligation of informing Plaintiff of her right to representation and at the hearing the ALJ fulfilled her obligation as well.

*Sindoni*, 2015 WL 3901955, at *4. Here, Plaintiff initially expressed confusion as to whether he needed a representative and never expressed an affirmative wish to proceed without one. While a lack of counsel, in and of itself, is not a sufficient ground for remand, in light of the circumstances of this case and Plaintiff's alleged cognitive impairments and limitations, the

Court exercises an abundance of caution and finds Plaintiff did not properly waive his right to representation. *Grant*, 2008 WL 2986393, at *5 (citing *Alvarez*, 704 F. Supp. at 53). Remand is therefore required on this basis.

### B. Plaintiff's Briefed Arguments

Because remand is necessary for the reasons identified above, the Court declines to reach findings on Plaintiff's arguments concerning the ALJ's alleged failure to develop the record and errors in assessing the opinion evidence. (Dkt. No. 7 at 5-13.) However, upon remand, the ALJ should make efforts to ensure the record is complete and conduct a new analysis of the evidence of record.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 7) is **GRANTED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 9) is **DENIED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **VACATED**, and this case is **REMANDED**, pursuant to Sentence Four of 42 § U.S.C. 405(g) for proceedings consistent with this Decision and Order.

Dated: September 9, 2019
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge